UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MEMBLER.COM LLC d/b/a MEMBLER
ENTERTAINMENT,

                    Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                        12-CV-4941(JS)(GRB)

          -against-

CHRISTIAN BARBER p/k/a "MR. I GOT
IT" or "MIG" and MATTHEW WASSERMAN,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Brian A. Bloom, Esq.
                    Tony Garbis Dulgerian, Esq.
                    Certilman, Balin, Adler & Hyman, LLP
                    90 Merrick Avenue, 9th Floor
                    East Meadow, NY 11554

For Defendants:     Michael W. Martin, Esq.
                    Ron Lazebnik, Esq.
                    Lincoln Square Legal Services, Inc.
                    33 West 60th Street, 3rd Floor
                    New York, NY 10023

SEYBERT, District Judge:

          Currently, the following motions are pending before
the Court: (1) Defendant Matthew Wasserman's ("Wasserman")
motion to dismiss the Complaint (Wasserman Mot. to Dismiss,
Docket Entry 13); (2) Plaintiff Membler.com LLC's ("Plaintiff"
or "Membler") motion to amend the Complaint (Pl.'s Mot. to
Amend, Docket Entry 21); and (3) Defendant Christian Barber's
("Barber" or "MIG") motion to set aside the Clerk's entry of
default and dismiss the Complaint (Barber Mot. to Dismiss,
Docket Entry 29). For the following reasons, Barber's motion to

vacate the default is GRANTED, Barber and Wassermans's motions to dismiss are GRANTED IN PART and DENIED IN PART, and Plaintiff's motion to amend the Complaint is GRANTED IN PART and DENIED IN PART.

BACKGROUND

I.  <u>The Complaint</u>

Plaintiff originally commenced this case on October 3, 2012 against Wasserman and Barber (collectively "Defendants"), alleging claims against both Defendants for copyright infringement, conspiracy, misappropriation and conversion, and unjust enrichment; claims against Barber for breach of contract and breach of the implied covenant of good faith and fair dealing; and claims against Wasserman for tortious interference with contract.

Plaintiff is a company in the business of representing, managing, and promoting musicians to record labels and the general public. (Compl. ¶ 9.) Defendant Barber is a recording artist professionally known in the music industry as "Mr. I Got It" or "MIG." (Compl. ¶¶ 1, 10.) In or around 2009, Plaintiff contacted Barber, offering representation in the music industry. (Compl. ¶ 10.)

On approximately October 12, 2009, Plaintiff and Barber entered into a contract (the "Agreement"), for an initial period of three years, pursuant to which Barber agreed, among

other things, that Plaintiff would be his "sole and exclusive agent." (Compl. ¶ 11.) The Agreement was automatically renewable for another three year period if gross receipts generated by the parties during the initial term exceeded $350,000. (Compl. ¶ 12.) The Agreement also provided that, in exchange for its services, Plaintiff would retain a 50% co-ownership interest in the works and associated copyrights that Barber created. (Compl. ¶ 13.)

During the initial term, Plaintiff invested substantial time, effort, and capital into representing Barber, including assistance in producing and recording hundreds of songs and music videos. (Compl. ¶¶ 15-16.) Plaintiff was also a creative contributor to the lyrics and musical compositions of Barber's recorded music. (Compl. ¶ 15.)

Meanwhile, in or around mid-2010, Plaintiff hired Defendant Wasserman as an intern. (Compl. ¶ 19.) In that capacity, Wasserman gained access to confidential and proprietary information, including industry contacts. (Compl. ¶ 22.) Wasserman then used that information to convince Barber to breach the contract and exploited industry contracts to promise Barber that he could provide appropriate industry representation. (Compl. ¶¶ 20-24.) For example, in or around May 2012, Wasserman broke into Plaintiff's satellite offices in Hicksville and stole a computer hard drive containing over 300

recorded songs from various artists, including Barber, as well as other confidential and proprietary information.    (Compl. ¶ 25.)

Plaintiff terminated Wasserman, but Wasserman exploited the stolen songs and videos by attempting to solicit a record deal for Barber and using the video footage to promote Barber on Facebook and through other media outlets.    (Compl. ¶¶ 26-29.)   Plaintiff alleges that Barber "recently obtained a record deal, using the copyrighted material and confidential and proprietary information and trade secrets which the Defendants conspired to steal" from Plaintiff.   (Compl. ¶ 30.)

II.  The Proposed Amended Complaint

The Proposed Amended Complaint generally contains the same factual allegations and claims as the initial Complaint. Accordingly, the Court will note the relevant differences, as necessary, during the course of its discussion.

Briefly, however, the Court takes this opportunity to highlight some of the key amendments contained in the Proposed Amended Complaint.   Specifically, the Proposed Amended Complaint characterizes the Agreement as an "exclusive managerial, production[,] and agency agreement."   (Proposed Amended Complaint ("PAC") ¶ 1.)   It also adds some details about the Agreement, including that Membler agreed to "advise and counsel

MIG with respect to his music career" (PAC ¶ 14) and that Membler was MIG's "manager, agent, and producer" (PAC ¶ 15).

It further expounds upon the alleged contributions of Membler during the initial period, such as that its producers "provided creative assistance and suggestions in connection with the production of MIG's music" and that Plaintiff "created and produced all of the scenes for MIG's music videos." (PAC ¶ 20). Furthermore, the Proposed Amended Complaint explains that the hard drive that Wasserman allegedly stole from its satellite office "was the only original copy in Membler's possession" (PAC ¶ 29) and that "Wasserman's misappropriation and conversion of the hard drive has prevented Membler from filing applications to register the vast majority of the Copyrighted Works, since Membler no longer has a deposit copy to file with the United States Copyright Office" (PAC ¶ 30).  However, since filing the original Complaint, Membler alleges that it obtained a copy of one of the works, a song entitled "Got Away," and subsequently received a U.S. Copyright Registration.  (PAC ¶ 36).

Finally, the Proposed Amended Complaint adds a claim for declaratory judgment of joint authorship and a claim against Barber for accounting.

III.  <u>Procedural History</u>

Plaintiff commenced this action on October 3, 2012 and served a Summons and Complaint on Wasserman on October 4, 2012.

(See Docket Entry 4.)  Plaintiff served a Summons and Complaint on Barber on October 11, 2012.  (See Docket Entry 5.)  Wasserman timely responded to the Summons and Complaint, but Barber did not, and on December 6, 2012, Plaintiff requested a certificate of default against Barber.  (Docket Entry 11).  The Clerk of the Court then issued a notice of default on December 10, 2012. (Docket Entry 12.)

As part of his motion to vacate the default, Barber asserts that on October 29, 2012 he emailed Plaintiff's counsel. (Barber Aff., Docket Entry 29-2, ¶ 13 & Ex. B.)  Assuming that such response was sufficient, and still attempting to obtain representation himself, Barber failed to formally respond to the Complaint.

<u>DISCUSSION</u>

Currently, Defendant Barber requests that the Court set aside the entry of default against him and either dismiss the Complaint against him for lack of personal jurisdiction due to improper service of process or allow him to join in Defendant Wasserman's motion to dismiss.  The Court will first address the motion to vacate default and, finding that the default should be vacated and that Barber should be permitted to join in Wasserman's motion to dismiss, the Court will simultaneously address those motions along with the cross-motion to amend.

6

I.   <u>Barber's Motion to Vacate the Default</u>

As previously noted, the Clerk of the Court entered default against Defendant Barber on December 10, 2012. (Docket Entry 12.)   Currently, Barber moves to vacate the default because Plaintiff served the Summons and Complaint at one of Plaintiff's prior addresses, his grandmother's house at 620 Baychester Avenue, Apartment 10F, Bronx, New York 10475. (Barber Aff. ¶ 3.)   At the time of service, however, Plaintiff had moved several times, finally residing with his mother at 61 Ravine Avenue, Apartment 1B, Yonkers, New York 10701.   (Barber Aff. ¶¶ 4-6.)

Plaintiff agrees that the default against Barber should be vacated and apparently concedes that it did not properly serve Barber with the original Summons and Complaint. (<u>See</u> Pl.'s Ltr. Resp. to Barber Mot. to Dismiss, Docket Entry 34.)   On consent, the Court hereby VACATES the notice of default against Barber.

II.  <u>Motions to Dismiss and Amend</u>

The Court will first address the applicable legal standards before turning to the merits of the pending motions.[1]

---

[1] The Court notes that Barber has joined in Wasserman's motion to dismiss.   (<u>See</u> <u>generally</u> Barber Mot. to Dismiss.)   Accordingly, and while the Court may refer to the arguments as propounded in Wasserman's briefs, to the extent applicable they may be understood to refer to the arguments of both Defendants.

7

A.  Legal Standards

1.  Motion to Dismiss

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

2.  Motion to Amend

Courts should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). To determine whether an amended claim is futile, courts analyze

whether the proposed pleading would withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeal</u>, 282 F.3d 83, 88 (2d Cir. 2002).

III.  <u>Copyright Infringement Claims</u>

Defendants move to dismiss Plaintiff's copyright infringement claims because, they argue, Plaintiff has not adequately pled any of its elements.  The Court agrees.  Plaintiff's Proposed Amended Complaint rectifies some of the deficiencies in the original Complaint, however.

To properly state a claim for copyright infringement, Plaintiff must allege: "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statue, and 4) by what acts during what time the defendant infringed the copyright." <u>Kuklachev v. Gelfman</u>, 600 F. Supp. 2d 437, 473 (E.D.N.Y. 2009).  According to Defendants, Plaintiff has failed to allege each of these elements.  The Court will address the elements, and Defendants' arguments, in turn.

A.  <u>Registration of Alleged Copyrights</u>

Wasserman's motion to dismiss opens the substantive analysis with a discussion of 17 U.S.C. § 411 and the requirements of registration.  (Wasserman Br. to Dismiss, Docket

Entry 13-1, at 4.)   As Wasserman correctly notes, Section 411(a) provides that, with exceptions not relevant here, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."   17 U.S.C. § 411(a).

Plaintiff does not dispute that it did not register the "Copyrighted Works" (Pl.'s Opp. Br., Docket Entry 20, at 4), but claims that it was unable to do so because "Wasserman wrongfully stole, and continues to possess, a computer hard drive containing the digital audio recordings" thus depriving Plaintiff of a deposit copy to deposit with the United States Copyright Office (Pl.'s Opp. Br. at 4).   Plaintiff also seeks to amend its Complaint because it has obtained U.S. Copyright Registration No. SRU1-100-263 for the song "Got Away."   (PAC ¶ 36.)   The Court will first address Plaintiff's opposition insofar as it argues that it could not register the Copyrighted Works before turning to its proposed amendment.

Courts in this Circuit have consistently made clear that a plaintiff's failure to register or preregister a copyright merits dismissal of an infringement claim.   See Psihoyos v. John Wiley & Sons, Inc., No. 11-CV-1416, 2011 WL 4916299, at *2 (S.D.N.Y. Oct. 14, 2011) ("Without showing evidence of a valid, registered copyright in the photographs

10

used by Wiley, plaintiff's claim for copyright infringement fails."); Lennon v. Seaman, 84 F. Supp. 2d 522, 524 (S.D.N.Y. 2000) (dismissing infringement claims for items such as "other photographs, videotapes or depictions" that were not yet specifically identified or registered); Conan Props., Inc. v. Mattel, Inc., 601 F. Supp. 1179, 1182 (S.D.N.Y. 1984) ("[T]he motion to dismiss plaintiff's copyright infringement claims with respect to books, films, and comic books, other than those which are the subject of the registrations attached to the Amended Complaint, is granted . . . ."). While Plaintiff's opposition offers a perfectly logical reason as to why Plaintiff was unable to register the works--i.e., that Wasserman allegedly stole the hard drive--it offers no case law or statutory support. In fact, and as Wasserman asserts, a defendant's "bad acts" do not alleviate a plaintiff from Section 411(a)'s requirements. See Muniz v. Morillo, No. 06-CV-6570, 2008 WL 4219073, at *4 (S.D.N.Y. Sept. 10, 2008) ("Plaintiff cites no authority, and the Court is aware of none, to support the assertion that a defendant's 'bad acts' should suspend the registration requirement for jurisdiction to bring a claim under the Copyright Act."). Accordingly, Defendants' motion to dismiss Plaintiff's copyright infringement claims is GRANTED.

Since filing the original Complaint, however, Plaintiff has sought and obtained registration for one work, a

song entitled "Got Away." (See PAC ¶ 36.) Defendants counter that such an amendment is inappropriate because Plaintiff obtained registration only after filing the instant action. (Wasserman Reply Br., Docket Entry 31, at 4.) The Court disagrees with Defendants and GRANTS Plaintiff's motion to amend in this regard.

Certainly, the language of Section 411(a) is clear, and even allegations of a pending application for registration are insufficient. Moreover, the Second Circuit in Pyatt v. Raymond, 462 F. App'x 22 (2d Cir. 2012), recently affirmed a district court's holding that a plaintiff's post-commencement copyrights in additional versions of particular lyrics were irrelevant and not the subject of the complaint. Id. at 24. Defendants, however, cite Pyatt for the "clear" proposition that "a registration filed after a lawsuit has commenced does not cure the claim's defect." (Wasserman Reply Br. at 4.)

The plaintiff in Pyatt, though, did not seek to amend the Complaint. In fact, subsequent treatises have cited Pyatt for the proposition that post-commencement registrations will not automatically be read into the complaint and that the plaintiff should seek amendment. See RAYMOND J. DOWD, COPYRIGHT LITIGATION HANDBOOK § 7:1 (2d ed. 2012) ("[I]f a plaintiff registers copyrights after the filing of a complaint but does not supplement the complaint pursuant to Rule 15(d) of the Federal

Rules of Civil Procedure, the court may dismiss the case."); PATRY ON COPYRIGHT § 19:4 (2013) ("Where plaintiff has received registrations subsequent to the filing of the complaint, the complaint should be amended."). Such a reading of Pyatt harmonizes with additional Second Circuit precedent. See Lennon, 84 F. Supp. 2d at 524 ("It is well settled that a plaintiff may amend an infringement complaint to include allegations regarding items discovered subsequent to the filing of the complaint."); Historical Truth Prods., Inc. v. Sony Pictures Entm't, Inc., No. 93-CV-5529, 1995 WL 693189, at *6 (S.D.N.Y. Nov. 22, 1995) (registration after commencement was not fatal); Conan Props., Inc., 601 F. Supp. at 1182 ("If, in fact, the copyrights have been registered, the defect in the Amended Complaint can be cured simply by filing a second amended complaint . . . .").

Here, Plaintiff obtained registration for the song "Got Away" on January 17, 2013 (PAC ¶ 36) and moved to amend the Complaint days later on January 22, 2013 (Pl.'s Mot. to Amend, Docket Entry 21). Thus, the fact that Plaintiff obtained registration after initially filing the Complaint does not preclude Plaintiff from amending the Complaint and, because Plaintiff has otherwise stated a claim for infringement as discussed below, Plaintiff's motion to amend the Complaint to

add a claim of infringement as to the specific song entitled
"Got Away" is GRANTED.[2]

B.  Plaintiff's Ownership in Copyrights

       Defendants further maintain that Plaintiff has not
properly alleged the element of ownership in order to maintain
its infringement claim.  The Court disagrees.

       Under the Copyright Act, a "joint work" is "a work
prepared by two or more authors with the intention that their
contributions be merged into inseparable or interdependent parts
of a unitary whole."  17 U.S.C. § 101.  "The authors of a joint
work are co-owners of the copyright in the work."  Holtzbrinck
Publ'g Holdings, L.P. v. Vyne Commc'ns, Inc., No. 97-CV-1082,
2000 WL 502860, at *10 (S.D.N.Y. Apr. 26, 2000).  Thus, "[t]o
state a claim of co-authorship, '[a] co-authorship claimant
bears the burden of establishing that each of the putative co-
authors (1) made independently copyrightable contributions to
the work; and (2) fully intended to be co-authors.'"  Exceller
Software Corp. v. Pearson Ed., Inc., No. 10-CV-0381, 2010 WL
4486944, at *4 (S.D.N.Y. Nov. 9, 2010) (quoting Thomson v.
Larson, 147 F.3d 195, 200 (2d Cir. 1998)).

_____

[2] Wasserman's arguments regarding prejudice and the potential
need for additional amendments to the Complaint are unavailing.
(See Wasserman Reply Br. at 24-26.)  Currently, this is
Plaintiff's first motion to amend the Complaint and that further
requests for amendments may or may not arise in the future does
not affect the analysis at this juncture.

Here, Plaintiff alleges that it made independently copyrightable contributions because it assisted in producing and recording Plaintiff's songs and contributed to the lyrics and musical compositions. (Compl. ¶¶ 15-16.) These alleged contributions suggest "some minimal degree of creativity" on Plaintiff's part. Huurman v. Foster, No. 07-CV-9326, 2010 WL 2545865, at *12 (S.D.N.Y. June 21, 2010) (internal quotation marks and citation omitted). While Defendants maintain that Plaintiff's "contributions of lyrics and music may still be too minimal," (Wasserman Br. to Dismiss at 8), at this stage Plaintiff has at least plausibly suggested the requisite amount of contribution. See Ulloa v. Universal Music & Video Distrib. Corp., 303 F. Supp. 2d 409, 418 (S.D.N.Y. 2004) (noting that "original contribution by a sound engineer, editor, or producer may result in a joint ownership" (emphasis omitted)). Moreover, the Proposed Amended Complaint expands upon this claim and adds factual assertions such as that Plaintiff's producers "provided creative assistance and suggestions" in producing Barber's music and that Plaintiff "also created and produced all of the scenes for MIG's music videos." (PAC ¶ 20.)

Moreover, Plaintiff sufficiently alleges that, pursuant to their Agreement, Plaintiff and Barber agreed that Plaintiff would retain a 50% co-ownership interest in the works and that both "intended that their respective contributions to

MIG's recorded music [would] be merged into inseparable and interdependent parts of a unitary whole." (Compl. ¶¶ 13-14.) Defendants maintain that the Agreement relates to fees, and therefore is not indicative of the parties' intent. (Wasserman Br. to Dismiss at 10.) The Agreement, however, plausibly contemplates Plaintiff's creative contributions beyond a mere agency agreement. (See, e.g., PAC ¶ 12 (discussing Agreement's provision regarding Plaintiff's efforts in promoting Barber and recording Barber's songs); Agreement, PAC Ex. A (discussing assistance with respect to promotion and recording).) "To determine whether purported co-authors possess the requisite intent to qualify as joint authors" the Court "must make a nuanced inquiry into factual indicia of ownership and authorship." Huurman, 2010 WL 2545865, at *12 (internal quotation marks and citation omitted). Accordingly, "[t]he question of whether the parties intended to be co-authors is not susceptible to resolution on a motion to dismiss." Exceller Software Corp., 2010 WL 4486944, at *4. At this stage, Plaintiff has adequately pled a mutual intention of co-authorship.[3]

---

[3] Similarly, Plaintiff's motion to amend the Complaint insofar as it seeks to add a declaratory judgment claim for co-authorship is GRANTED. As the copyright infringement claim at least partially survives, the issue of whether the declaratory judgment claim independently confers subject matter jurisdiction is irrelevant. Insofar as Defendants argue that this amendment

C.    Identification of Which Copyrighted Works Were
      Infringed and How

Wasserman further asserts that Plaintiff has failed to
properly allege a copyright infringement claim against him[4]
because Plaintiff has failed to sufficiently plead which alleged
copyrighted works were infringed and how.   Preliminarily, the
Court notes that Plaintiff's copyright infringement claim
survives (and Plaintiff's motion to amend is granted) only
insofar as its allegations pertain to the song "Got Away," for
which Plaintiff has obtained registration.   Accordingly,
Wasserman's arguments regarding failure to identify any other
alleged copyrighted works are irrelevant.

With respect to alleged acts that constitute
infringement, Plaintiff has set forth sufficient allegations.
To overcome a motion to dismiss, Plaintiff must allege by what
acts and during what time Wasserman allegedly infringed a
copyright with some specificity.   See Cole v. John Wiley & Sons,
Inc., No. 11-CV-2090, 2012 WL 3133520, at *13 (S.D.N.Y. Aug. 1,
2012) (finding allegations insufficient that alleged "no
detail").   The level of specificity required, however, is not as

---

is futile (Wasserman Reply Br. at 19), the Court disagrees and
finds that there is an actual controversy sufficient to maintain
the request for declaratory relief.   See Huurman, 2010 WL
2545865, at *8 (explaining actual controversy analysis).

[4] The Proposed Amended Complaint directs Plaintiff's copyright
infringement claim to Defendant Wasserman only.

17

demanding as Wasserman characterizes.  Maverick Recording Co. v. Goldshteyn, No. 05-CV-4523, 2006 WL 2166870, at *3 (E.D.N.Y. July 31, 2006) (noting that the specificity required "is not great"); see also Elektra Entm't Grp., Inc. v. Schwartz, No. 06-CV-3533, 2008 WL 906737, at *3 (E.D.N.Y. Apr. 1, 2008) ("Plaintiffs were not required to allege specific, individual instances of infringement . . . .").

Here, Plaintiff alleges that Wasserman stole copyrighted material and then took actions such as published video footage on various media outlets.  Such allegations alone are sufficient.  See Arista Records, Inc. v. Musumeci, No. 03-CV-4465, 2008 WL 941629, at *1 (E.D.N.Y. Apr. 4, 2008) (allegations that defendant illegally used the internet to download and distribute copyrighted material sufficient to overcome motion to dismiss); Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic, No. 97-CV-9248, 1999 WL 816163, at *4 (S.D.N.Y. Oct. 13, 1999) (finding allegations such as that defendant displayed images from the subject work on its internet site to sufficiently satisfy plaintiff's burden of stating how and when defendant infringed the copyright).  Moreover, the Proposed Amended Complaint asserts that earlier this year Wasserman published the copyrighted song "Got Away" on the Source website (PAC ¶ 36.).  See Maverick Recording Co., 2006 WL 2166870, at *3 ("Downloading and uploading copyrighted files

18

from a peer-to-peer network constitutes, respectively, reproducing and distributing copyrighted material in violation of 17 U.S.C. § 106."). Accordingly, Wasserman's motion to dismiss in this regard is DENIED, and Plaintiff's motion to amend is GRANTED.

IV. <u>Wasserman as Licensee</u>

Wasserman further asserts that, independent of any potential issues with Plaintiff's ability to adequately plead the elements of a copyright infringement claim, Plaintiff also has not identified a party capable of infringing the alleged copyright rights. (Wasserman Br. to Dismiss at 13.) In other words, Wasserman maintains that he was acting with the authority of co-author Barber. The Court disagrees.

To begin, co-authors are not liable to one another for infringement. See <u>Willsea v. Theis</u>, No. 98-CV-6773, 1999 WL 595629, at *9 (S.D.N.Y. Aug. 6, 1999) ("It is well-settled that co-authors have no claim of infringement against one another." (citing <u>Weisman v. Freeman</u>, 868 F.2d 1313, 1318 (2d Cir. 1989)). Taking that proposition one step further, courts have also found that a license from one co-author to a third party also shields the third-party from liability. See <u>McKay v. Columbia Broad. Sys., Inc.</u>, 324 F.2d 762, 763 (2d Cir. 1963) ("[A] license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement."). Wasserman

asserts that he acted pursuant to a license or agreement from Barber, and therefore Plaintiff's claim for copyright infringement against him must be dismissed. (Wasserman Br. to Dismiss at 13-16.)

"Federal law recognizes two types of licenses: exclusive and nonexclusive licenses." Crump v. QD3 Entm't, Inc., No. 10-CV-3564, 2011 WL 446296, at *4 (S.D.N.Y. Feb. 3, 2011). A non-exclusive license "permit[s] licensees to use the copyrighted material and may be granted to multiple licensees," whereas an exclusive license "grant[s] to the licensee the exclusive right-superior even to copyright owners' rights-to use the copyrighted material in a manner as specified by the license agreement." Davis v. Blige, 505 F.3d 90, 99 (2d Cir. 2007). A co-owner, such as Barber, may grant a non-exclusive license unilaterally but not an exclusive license. Id. at 100-01.

Wasserman does not specify whether the purported license from Barber was exclusive or non-exclusive. See id. at 99 ("A co-owner's ability to grant licenses to third parties unilaterally will . . . depend on the type of licenses granted."). Plaintiff, however, disputes the existence of any license. "Where the existence of a license is in dispute, the party claiming the benefit of the license bears the burden of proving its existence." Crump, 2011 WL 446296, at *4. Furthermore, "[i]n this context, the existence of a license is

20

viewed as an affirmative defense." Powlus v. Chelsey Direct, LLC, No. 09-CV-10461, 2011 WL 135822, at *3 (S.D.N.Y. Jan. 10, 2011). Courts are typically hesitant to grant a motion to dismiss on an affirmative defense, see Ortiz v. City of N.Y., 755 F. Supp. 2d 399, 401-02 (E.D.N.Y. 2010) ("A motion to dismiss is often not the appropriate stage to raise affirmative defenses . . . ."), and here dismissal would be appropriate only if "the suit clearly and unambiguously demonstrates the existence of the defendant's license . . . ." Powlus, 2011 WL 135822, at *3 (internal quotation marks and citation omitted). As the Court cannot definitively say whether there was a license in this case, dismissal is not appropriate.

Although this is a somewhat fact-based inquiry, depending upon whether Wasserman can prove his "affirmative defense," the Court notes that Plaintiff has barely overcome Wasserman's motion to dismiss. This is particularly so because Plaintiff alleges a conspiracy between Barber and Wasserman. Allegations that Barber and Wasserman conspired to misappropriate and convert "proprietary and confidential information and trade secrets," however, does not necessarily mean that Barber granted Wasserman a non-exclusive license.

Accordingly, the motion to dismiss on this ground is DENIED and Plaintiff's motion to amend is GRANTED.

V. Plaintiff's Proposed Additional Accounting Claim

In addition to the aforementioned infringement claims, Plaintiff also seeks to amend the Complaint to add a claim of accounting against Barber.  Defendants oppose the addition of this claim because, among other reasons, Plaintiff has failed to plead the existence of a fiduciary relationship.[5]   The Court agrees.

"A duty to account action under the Copyright Act lies when a co-author exploits the work in question but declines to share royalties with his co-author."  Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc., No. 09-CV-5580, 2009 WL 3496115, at *2 (S.D.N.Y. Oct. 23, 2009) (citing Thomson v. Larson, 147 F.3d 195, 199 (2d Cir. 1998)); see also Davis, 505 F.3d at 100 ("[A] co-owner who grants a non-exclusive license is accountable to his co-owner for income gained by the grant of the license.").  Although the Copyright Act provides for a potential claim of accounting, however, state law principles still apply.  See 17 U.S.C. § 201, Notes of the Judiciary Committee ("There is also no need for a specific statutory provision concerning the rights and duties of the coowners of a work; court-made law on this point is left undisturbed.").

_____

[5] Defendants' additional arguments regarding whether an accounting claim confers federal subject matter jurisdiction are irrelevant because the Court has declined dismissal of Plaintiff's infringement claims.

Under New York law, a plaintiff seeking to bring an accounting claim must allege "(a) that a fiduciary relationship existed between the parties and (b) that the defendant breached his or her fiduciary duty." Levine, 832 F. Supp. 2d at 192 (internal quotation marks and citation omitted). Here, Plaintiff has alleged no fiduciary relationship running from Barber to Plaintiff, and their relationship as co-authors or co-owners is not enough. See Mills v. Cottrell, No. 04-CV-5562, 2006 WL 3635325, at *5 (S.D.N.Y. Dec. 8, 2006) ("[T]here are traditionally no fiduciary duties owed between joint authors or copyright holders.").

Accordingly, Plaintiff's motion to amend to add an accounting claim against Barber is DENIED.

## VI. State Law Claims

Finally, Defendants ask this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. As the Court has declined to dismiss Plaintiff's federal claims, however, it cannot dismiss for lack of subject matter jurisdiction as Defendants suggest. Accordingly, the motion to dismiss the state law claims for lack of jurisdiction is DENIED.

### A. Valid Contract

Defendants next maintain that, even if this Court does have jurisdiction, many of Plaintiff's state law claims depend

on the existence of a valid contract, an element lacking here. Much like the issue of whether Wasserman is a licensee, the Court finds that Plaintiff has set forth minimal, though sufficient, allegations to overcome a motion to dismiss.

Defendants argue that the contract at issue here between Plaintiff and Barber was a "theatrical employment agency" as defined by New York State law.

> "Theatrical employment agency" means any person . . . who procures or attempts to procure employment or engagements for an artist, but such term does not include the business of managing entertainments, exhibitions or performances, or the artists or attractions constituting the same, where such business only incidentally involves the seeking of employment therefor.

N.Y. GEN. BUS. LAW § 171(8). If it was a theatrical employment agency, Defendants point to New York General Business Law § 185(8), which places a fee ceiling of no more than 10% for each engagement. Because the Agreement here provided that Plaintiff would receive 50% in fees, Defendants maintain that the Agreement was not a valid and enforceable contract.

Plaintiff does not dispute the 10% fee ceiling, but maintains that the Agreement was not a theatrical employment agency. Certainly Wasserman is correct in pointing out that, at times, the Agreement characterizes Plaintiff as an "exclusive agent." (Agreement, PAC Ex. A.) However, as the statutory language and interpreting case law make clear, the key inquiry

is whether or not the agency aspect of the Agreement was incidental. See, e.g., Friedkin v. Harry Walker, Inc., 90 Misc. 2d 680, 682, 395 N.Y.S.2d 611, 613 (N.Y. City Civ. Ct. 1977) (noting that determination turned on whether defendant's business only incidentally involved the seeking of employment), abrogated on other grounds by Rhodes v. Herz, 84 A.D. 3d 1, 920 N.Y.S. 2d 11 (1st Dep't 2011).

Here, Plaintiff alleges that it is in the business of "representing, managing, and promoting musicians to record labels and the general public" (Compl. ¶ 9), that it produced and recorded music and music videos for Barber (Compl. ¶ 16), and that it made contributions to Barber's actual works (Compl. ¶ 14). The Proposed Amended Complaint further alleges that "[p]ursuant to the Agreement, Membler was MIG's manager, agent, and producer." (PAC ¶ 15.) Such allegations plausibly assert that Plaintiff's role as an agent may have been incidental to its other functions such as producer and manager. See Esther Creative Grp., LLC v. Gabel, 25 Misc. 3d 1219(A), *4, 901 N.Y.S. 2d 906 (Sup. Ct. N.Y. Cnty. 2009) ("Dismissal is not warranted here as Esther Creative alleges that it was Defendants' manager[.]"). Furthermore, the Agreement itself discusses Plaintiff's advice and counseling, efforts in promoting and recording, and engagement in other activities beneficial to Barber's reputation. (Agreement, PAC Ex. A.)

25

Accordingly, Defendants' motion to dismiss in this regard is DENIED and Plaintiff's motion to amend is GRANTED.

B.   Tortious Interference with Contract

Wasserman further argues that Plaintiff cannot maintain a claim of tortious interference of contract against him because Plaintiff has not alleged that Wasserman had actual knowledge of the Agreement or that Wasserman intended to procure Barber's breach.   The Court disagrees.

Other than the existence of a valid contract, which the Court has just discussed, the elements of tortious interference with contract under New York law are "[1] defendant's knowledge of that contract; [2] defendant's intentional procurement of the third-party's breach of the contract without justification; [3] actual breach of the contract, and [4] damages resulting therefrom." Highland Capital Mgmt. LP v. Schneider, 198 F. App'x 41, 45 (2d Cir. 2006).   Wasserman disputes the elements of knowledge and intentional procurement.

However, the Complaint alleges that Wasserman knew of the Agreement, presumably through his role as an intern with Plaintiff. (Compl. ¶¶ 19-20.) Thus, Plaintiff has sufficiently alleged the knowledge element of a tortious interference with contract claim. See St. John's Univ., N.Y. v. Bolton, 757 F. Supp. 2d 144, 172-73 (E.D.N.Y. 2010) ("While Plaintiff has the

26

ultimate burden of proving by a preponderance of the evidence
that Spireas had actual knowledge of Bolton's contractual
obligations to St. John's, on a motion to dismiss it is
sufficient for Plaintiff to allege facts from which the court
might reasonably infer that Spireas had such knowledge."). In
addition, the Proposed Amended Complaint expounds upon the
knowledge allegations and asserts that Plaintiff "advised
Wasserman of the Agreement" and that Wasserman even sat in on
some of Barber's recording sessions. (PAC ¶ 24.)

With respect to intentional procurement of the breach,
"[t]he inducement causing the breach 'may be any conduct
conveying to the third person the actor's desire to influence
him not to deal with the other.'" St. John's Univ., N.Y., 757
F. Supp. 2d at 173. Mere conclusory allegations without factual
support, however, are insufficient. See Farrandino & Son, Inc.
v. Wheaton Builders, Inc., LLC, 82 A.D.3d 1035, 1036, 920 N.Y.S.
2d 123 (2d Dep't 2011) ("Here, the plaintiff merely asserted, in
a conclusory manner and without the support of relevant factual
allegations, that HE2's actions caused Wheaton to breach the
subcontract."); M.J. & K. Co., Inc. v. Matthew Bender & Co.,
Inc., 220 A.D.2d 488, 490, 631 N.Y.S.2d 938 (2d Dep't 1995)
(finding plaintiff's contentions without factual support to be
insufficient).

Wasserman is correct that the original Complaint lacks sufficient allegations regarding intentional inducement. The Proposed Amended Complaint, though, rectifies these deficiencies. For example, the Proposed Amended Complaint asserts that "Wasserman falsely promised MIG that he could successfully represent and manage MIG, in an effort to induce MIG to breach the Agreement." (PAC ¶ 25.) It goes on to allege that,

> [u]pon information and belief, while he was working at Membler, Wasserman stole industry contacts, originally recorded music tracks, originally recorded music videos and related confidential and copyrighted information belonging to Membler and provided them to MIG in order to induce MIG to breach the Agreement and sign on with Wasserman for representation in the music industry.

(PAC ¶ 27.) As such, Plaintiff's allegations contained in the Proposed Amended Complaint are not merely conclusory and adequately state a claim against Wasserman for tortious interference with contract. See MGR Meats, Inc. v. Schweid, No. 10-CV-3068, 2012 WL 6675123, at *3-4 (E.D.N.Y. Dec. 21, 2012) (allegations that defendant advised third party not to pay plaintiff and brokering the transfer of customer accounts adequately pled intentional procurement for tortious interference with contract claim); Bertuglia v. City of N.Y., 839 F. Supp. 2d 703, 729 (S.D.N.Y. 2012) (allegations that

28

defendant inferred that plaintiff may be stealing from clients adequately stated claim).

Accordingly, Wasserman's motion to dismiss the tortious interference with contract claim is GRANTED and Plaintiff's motion to amend to assert additional factual allegations in this regard is also GRANTED.

C. <u>Misappropriation, Conversion, and Conspiracy</u>

The Complaint and Proposed Amended Complaint also include allegations of misappropriation and conversion. For example, the Complaint alleges that "Defendants are in possession of money or property that rightly belongs to Plaintiff" (Compl. ¶ 58) and "Defendants, who received possession of Plaintiff's money or property, thereafter, without authority, intentionally exercised control over those funds in such a manner as to interfere with Plaintiff's right of possession of such money or property" (Compl. ¶ 59).[6] Defendants move for dismissal of these claims for a variety of reasons. The Court finds that Defendants' motion to dismiss the misappropriation claim should be GRANTED, but that Plaintiff's conversion claim survives.

To begin, Wasserman correctly points out that Plaintiff alleges that Defendants "misappropriated and converted

---

[6] The Proposed Amended Complaint contains identical language in paragraphs 78 and 79.

various tangible and intangible elements" (Wasserman Br. to Dismiss at 20), including that one or both Defendants "misappropriate[d] Plaintiff's proprietary and confidential information and trade secrets" (Compl. ¶ 1), "stole industry contacts, originally recorded music tracks, originally recorded music videos and related confidential and copyrighted information" (Compl. ¶ 23), and "stole a computer hard drive containing over 300 recorded songs from numerous artists . . . along with other confidential and proprietary information, such as music videos and other video footage" (Compl. ¶ 25).  It appears from these allegations, then, that Plaintiff seeks to maintain a cause of action for Defendants' misappropriation of trade secrets (see Pl.'s Opp. Br. at 18-19 (discussing trade secrets)) and for conversion of the hard drive (see Pl.'s Opp. Br. at 19 (discussing that "Defendant [Wasserman] illegally broke into Plaintiff's offices and stole the original hard drive containing hundreds of copyrighted songs and music videos.")).

    With respect to misappropriation of trade secrets, "this tort generally applies to cases where former employees utilize confidential information in the form of trade secrets." Watts v. Jackson Hewitt Tax Serv. Inc., 675 F. Supp. 2d 274, 278 (E.D.N.Y. 2009) (internal quotation marks, citation, and emphasis omitted).  "Under New York law, a trade secret is defined as any formula, pattern, device or compilation of

information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." EarthWeb, Inc. v. Schlack, 71 F. Supp. 2d 299, 314 (S.D.N.Y. 1999) (internal quotation marks and citation omitted) (alteration in original). In the case at bar, neither the Complaint nor the Proposed Amended Complaint explain exactly what confidential or proprietary information Defendants misappropriated. Insofar as Plaintiff alleges that Wasserman exploited industry contacts, this does not sufficiently state a claim for misappropriation of trade secrets. Plaintiff raises no allegations to suggest that these "industry contacts" were a secret or not otherwise accessible. Thin Film Lab, Inc., v. Comito, 218 F. Supp. 2d 513, 520 (S.D.N.Y. 2002) ("The most important factor is whether the information is secret."); Tactica Int'l Inc. v. Atlantic Horizon Int'l, Inc., 154 F. Supp. 2d 586, 606 (S.D.N.Y. 2001) (identity of customers may be a trade secret when identities are not readily ascertainable). Accordingly, Defendants' motion to dismiss the misappropriation claim, to the extent that it is grounded upon a theory of misappropriating industry contacts, is GRANTED and Plaintiff's motion to amend in this regard is DENIED.

Insofar as Plaintiff founds its claim for misappropriation and conversion on the single registered,

copyrighted work, this claim is partially preempted.  As <u>C.A.</u>
<u>Inc. v. Rocket Software, Inc.</u>, explains:

> Pursuant to Section 301(a) of the Copyright
> Act, federal copyright law will preempt a
> state law claim when two conditions are
> satisfied.  First, the subject matter of the
> work upon which the state claims are
> premised must fall within the subject
> matter [protected by] the Copyright Act . . . .
> Second, the rights that are asserted under
> the state law must be equivalent to those
> protected by the Copyright Act.

579 F. Supp. 2d 355, 366-67 (E.D.N.Y. 2008).  Essentially,
courts have held that the Copyright Act will preempt a state law
claim unless the state law claim has some "extra element" that
makes it qualitatively different from the infringement claim.
<u>See</u> <u>Atrium Grp. De Ediciones Y Publicaciones, S.L. v. Harry N.</u>
<u>Abrams, Inc.</u>, 565 F. Supp. 2d 505, 509 (S.D.N.Y. 2008).
Accordingly, to the extent that Plaintiff seeks relief for
Defendants' distribution, publishing, and/or reproducing of the
registered work, there is no element beyond the infringement
claim, and a claim for misappropriation and/or conversion for
the same acts is therefore preempted.  <u>See</u> <u>Levine v. Landry</u>, 832
F. Supp. 2d 176, 187-88 (N.D.N.Y. 2011).  However, to the extent
that Plaintiff seeks relief for Defendants' retention of the
work on the hard drive, it is not preempted.  <u>See</u> <u>Pentagen Tech.</u>
<u>Int'l, Ltd. v. CACI Int'l, Inc.</u>, No. 93-CV-8512, 1996 WL 435157,
at *14 (S.D.N.Y. Aug. 2, 1996) ("To the extent Pentagen's claim

for conversion is based on the physical taking of its computer hardware and software, that claim would not be preempted because it differs qualitatively from a claim of wrongful use or reproduction of a copyrighted work.").

Insofar as Plaintiff founds its claims for misappropriation and conversion not on Defendants' distribution, publishing, and/or reproducing of the additional (unregistered) works, but for Defendants' "failure to remit payment to him," again such claim is not preempted as "this claim does not seek to vindicate [Plaintiff's] rights" under the Copyright Act. Levine, 832 F. Supp. 2d at 188.

To summarize, to the extent that Plaintiff's misappropriation and conversion claims are based on distribution, publishing, and/or reproduction of the registered work, these claims are preempted by the Copyright Act and, therefore Defendants' motion to dismiss in this regard is GRANTED and Plaintiff's motion to amend on this theory is DENIED.  However, insofar as the misappropriation and conversion claims are based upon Defendants' retention of the hard drive or Defendants' failure to remit payment with respect to the unregistered works, Defendants' motion to dismiss is DENIED and Plaintiff's motion to amend is GRANTED.

In addition, Wasserman also argues for dismissal of Plaintiff's conversion claims because it is based upon an

illegal contract and because Plaintiff does not allege that it was "deprived of its only copy of anything contained on the alleged hard drive." (Wasserman Br. to Dismiss at 22.) However, for the reasons discussed above, the Court has not, at this stage, found that there was an illegal contract. Furthermore, the Proposed Amended Complaint specifically alleges that the hard drive was its only copy. (PAC ¶ 29.) Accordingly, because Defendants are correct in that Plaintiff failed to initially plead that the hard drive was its only copy, but Plaintiff then rectified this deficiency in its Proposed Amended Complaint, Defendants' motion to dismiss on this ground is GRANTED, and Plaintiff's motion to amend to replead the conversion claim is also GRANTED.

Finally, as the Court finds that there is a viable basis for Plaintiff's misappropriation and conversion claims, Plaintiff may also maintain a claim for conspiracy. Defendants appropriately argue that there is no independent tort of conspiracy. See Watts, 675 F. Supp. 2d at 279. Their argument, however, assumes that the Court will dismiss the misappropriation and conversion claims. Thus, insofar as Plaintiff bases its conspiracy claim on the still viable conversion claim, Defendants' motion to dismiss the conspiracy claim is DENIED and Plaintiff's motion to amend regarding such claim is GRANTED.

34

D.   Unjust Enrichment

Defendants also move to dismiss Plaintiff's unjust enrichment claim because it is duplicative of Plaintiff's conversion claim. Plaintiff responds that, where there is a dispute as to whether a valid contract existed, a Plaintiff may alternatively plead unjust enrichment and breach of contract. (Pl.'s Opp. Br. at 19-20.) While Plaintiff's opposition is correct, it does not address the question of whether Plaintiff may simultaneously plead unjust enrichment and conversion. In any event, and similar to Plaintiff's argument, the Court finds that Plaintiff may appropriately plead claims for the tort of conversion and the quasi-contract claim of unjust enrichment in the alternative.

"At the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims." St. John's Univ., N.Y., 757 F. Supp. 2d at 183. While Plaintiff's unjust enrichment and conversion claims may ultimately seek duplicative relief, at this stage the Court will not dismiss the unjust enrichment claim. Therefore, Defendant's motion to dismiss the unjust enrichment claim is DENIED and Plaintiff's motion to amend the Complaint with respect to this claim is GRANTED.[7]

---

[7] While the parties have not addressed the specific issue of preemption as it pertains to Plaintiff's unjust enrichment

CONCLUSION

For the foregoing reasons, Barber's motion to vacate is GRANTED, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART, and Plaintiff's cross-motion to amend is GRANTED IN PART and DENIED IN PART.  Accordingly, the Clerk of the Court is directed to docket the Proposed Amended Complaint (Cloom Dec. Ex. C) as the operative Complaint.  However, the Amended Complaint remains operative only insofar as it is consistent with the Court's rulings explained above.

Furthermore, Plaintiff is ORDERED to serve Defendant Barber with the Summons and Amended Complaint and to file proof of service on the docket within fourteen days of the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      September   23  , 2013
            Central Islip, NY

---

claim, the Court notes that the same general principles apply to this claim as applied to the misappropriation and conversion claims.  See Dyer v. V.P. Records Retail Outlet, Inc., No. 05-CV-6583, 2008 WL 2876494, at *5 (S.D.N.Y. July 24, 2008) ("Plaintiff[']s claim that Defendants have been unjustly enriched through commercial exploitation of the subject song and/or Video" was preempted as "simply an allegation of copyright infringement" (internal quotation marks and citation omitted)).